# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **Plaintiff,** | : | **CRIMINAL NO. _____** |
| | : | |
| | : | **29 U.S.C. § 501(c) (Theft from a** |
| **vs.** | : | **Labor Organization);** |
| | : | **29 U.S.C. § 186 (Unlawful Labor** |
| **ANTHONY FREDERICK,** | : | **Payments)** |
| **CHRISTOPHER KWEGAN, and** | : | **18 U.S.C. § 1343, 1346 (Wire and** |
| **GARY COOPER** | : | **Honest Service Fraud)** |
| | : | **18 U.S.C. § 1957 (Money** |
| **Defendants.** | : | **Laundering)** |
| | : | **18 U.S.C. § 371 (Conspiracy)** |
| | : | **18 U.S.C. § 2** |

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times material to this Indictment:

### A. Background

1.   Laborers International Union of North America (LIUNA) was a labor organization based in Washington, D.C. that represents construction laborers.  LIUNA was a labor organization in which employees who were employed in an industry affecting commerce, that is, building and construction, participated through their local unions and other subordinate bodies of LIUNA, and which existed for the purpose of

1

dealing with employers concerning such employees' hours, wages and working conditions.

2.   Pursuant to that representation, LIUNA executed collective bargaining agreements with several employers covering the building and construction industry in several states.   LIUNA was required to be governed in accordance with its constitution and by-laws.

3.   LIUNA Local 657 (hereinafter "Local 657") was a local union within LIUNA and a labor organization which represented construction laborers in the District of Columbia and Metropolitan Washington area.

4.   LIUNA and Local 657 were "labor organizations" engaged in industries and activities affecting commerce within the meaning of the Labor Management Reporting and Disclosure Act ("LMRDA"), Title 29, United States Code, Sections 402(i) and (j), and were subject to the provisions of the LMRDA governing "labor organizations" and were "labor organizations" within the meaning of the Labor Management Relations Act (LMRA), Title 29, United States Code, Sections 142, 152, and 186.

5.   Defendant ANTHONY FREDERICK was a member of LIUNA and Local 657, and served as both an officer and employee of Local 657, that is, Business Manager of Local 657.

6.   Local 657 maintained its funds in a checking account (Acct. No. xxx-xxx-3903) at Amalgamated Bank ("The Local 657 Amalgamated Account") and in a

checking account (Acct. No. xx-xxx-4490) at Capital One Bank ("The Local 657 Capital One Account").

## B. Duties Upon Defendant FREDERICK

7.   Pursuant to the LMRDA, Title 29, United States Code, Section 501(a), "officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group." As an officer, agent, representative, and employee of Local 657, Defendant ANTHONY FREDERICK was subject to Section 501(a) of the Labor Management Reporting and Disclosure Act, Title 29, United States Code and occupied a position of trust in relation to Local 657 and its members as a group.  As such, FREDERICK was subject to several fiduciary duties including:  1) to hold its money and property solely for the benefit of Local 657 and its members and to manage and expend the same in accordance with the by-laws of Local 657 and applicable resolutions of Local 657's governing bodies; 2) to refrain from dealing with Local 657 as an adverse party or on behalf of an adverse party in any matter connected with his duties; 3) to refrain from holding or acquiring any pecuniary or personal interest which conflicts with the interests of Local 657 in any transaction conducted by him or under his direction on behalf of Local 657; and 4) to account to Local 657 for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of Local 657.

8.   As a member, employee, and officer, of LIUNA, Defendant ANTHONY FREDERICK was subject to duties set forth in the LIUNA International Union Constitution and the LIUNA Uniform Local Constitution.  Section 4(F) of Article IV of the LIUNA Uniform Local Constitution, entitled "Officers," provides that it is the duty of the Business Manager, "to see to it that the affairs and business of the Local Union are being properly conducted in accordance with the Constitutions and with the rules, regulations, policies, practices and lawful orders and decisions."

9.   As an officer of Local 657, Defendant ANTHONY FREDERICK was subject to LIUNA's "Code of Best Practices" which specifies that:

> [I]t is hereby declared to be the policy of the General Executive Board that all proposed contracts in excess of three hundred fifty thousand ($350,000.00) dollars to be entered into by LIUNA or any of its affiliated or subordinate bodies shall be submitted to the General President.  If the General President determines that entry into such contract is inconsistent with the objectives and purposes of the Code, LIUNA or its affiliated or subordinate body may not enter into such contract.

10.   The LIUNA Code of Best Practices sets forth various fiduciary duties for LIUNA officers regarding avoidance of personal profit or advantage in conducting official business or the acceptance of any such personal advantage, including:

> Union officials and representatives shall ensure that Union assets and resources are expended only for proper purposes and never for personal gain or advantage.  In particular, the Union shall avoid the investment or use of its funds in a manner which results in the personal profit or advantage of any officer or representative of the Union.  Likewise, the Union shall avoid contracts for purchase or sale or for rendering services that result in the personal profit or advantage of any officer or representative of the Union, nor shall any officer, representative or employee of the International Union, District Council, or any

4

Local Union accept personal profit or special advantage from any action of any officer or representative of the Union.

> . . .

No officer or representative of the Union shall have a personal financial interest which conflicts with his/her Union duties.

> . . . [and]

No officer or representative shall accept "kickbacks", under-the-table payments, valuable gifts, lavish entertainment or any personal payment of any kind, other than regular pay and benefits for work performed as an employee, from an employer with which the Union bargains collectively or from a business or professional enterprise with which the Union does business.

### C. **STS General Contracting**

11.    STS General Contracting, Inc. (hereinafter "STS Contracting") was a Maryland corporation which was engaged in the business of construction in the Metropolitan Washington area and was an employer of employees employed in an industry affecting interstate and foreign commerce within the meaning of Sections 142, 152, 186, and 402 of Title 29, United States Code.

12. Defendant CHRISTOPHER KWEGAN and Defendant GARY COOPER were owners and principals in STS Contracting.   Defendant CHRISTOPHER KWEGAN and Defendant GARY COOPER were persons acting in the interest of STS Contracting within the meaning of Section 186 of Title 29, United States Code.

13.  Local 657 represented, sought to represent, and would admit to membership the employees of STS Contracting in the District of Columbia and elsewhere.  Local 657 existed for the purpose of dealing with STS Contracting concerning such

employees' hours, wages, and working conditions, within the meaning of Sections 142, 152, 186, and 402 of Title 29, United States Code.

14.     On or about May 31, 2013, Defendants GARY COOPER and CHRISTOPHER KWEGAN opened a checking account (Acct. No. xx-xx-8795) at Amalgamated Bank on behalf of STS Contracting ("The STS Contracting Amalgamated Account") with themselves as signatories to the account.

## COUNT ONE

(29 U.S.C. § 501(c), 18 U.S.C. § 371)

(Conspiracy to Commit Embezzlement from a Labor Organization)

1.   The allegations contained in paragraphs 1 through 14 of the General Allegations of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

2.   Beginning at least as early as April 2013, and continuing at least through June 2014, both dates being approximate, the exact dates being unknown to the Grand Jury, in the District of Columbia and elsewhere, Defendants ANTHONY FREDERICK, CHRISTOPHER KWEGAN, and GARY COOPER, together with others known and unknown to the grand jury, did unlawfully, willfully and knowingly combine, conspire, confederate, and agree among themselves and each other to commit an offense against the United States, namely:  to embezzle, steal, and unlawfully and willfully abstract and convert to their own use and to the use of STS Contracting, the moneys, funds, property, and other assets of Local 657, in violation of Title 29, United States Code, Section 501(c).

## Objects of the Conspiracy

3.   It was an object of the conspiracy that Defendants ANTHONY FREDERICK, CHRISTOPHER KWEGAN, and GARY COOPER, together and with others known and unknown to the grand jury, would embezzle, steal, and unlawfully and willfully abstract and convert to their own use and to the use of another,

the moneys, funds, property, and other assets of Local 657 by withdrawing funds from the Local 657 Amalgamated Account and the Local 657 Capital One Account by means of several checks to STS Contracting which were not authorized by the Executive Board of Local 657 in accordance with the governing rules of LIUNA and Local 657.

## Manner and Means of the Conspiracy

4.  It was a part of the conspiracy that Defendants ANTHONY FREDERICK, GARY COOPER and CHRISTOPHER KWEGAN would secretly cause the expenditure of more than $1.70 million of Local 657 funds contrary to the governing rules of LIUNA and its subordinate local unions and for uses other than for the benefit of Local 657 and its members.

5.  It was part of the conspiracy that that Defendants ANTHONY FREDERICK, GARY COOPER and CHRISTOPHER KWEGAN would cause Local 657 to pay STS Contracting approximately $1,100,000 for renovation to the Local 657 union hall worth less than $100,000.

6.  It was part of the conspiracy that Defendants ANTHONY FREDERICK, GARY COOPER and CHRISTOPHER KWEGAN would cause Local 657 to pay STS Contracting to expedite building permits for Local 657's training center which was already under construction for an exorbitant fee of "$20,000 plus Fees to permit" and greater, for a total of more than $580,000.

7.  It was a part of the conspiracy that Defendant ANTHONY FREDERICK would, directly and indirectly, induce, procure, and cause other employees of Local 657

to assist him to prepare and draft checks from the Local 657 Amalgamated Account and Local 657 Capital One Account made out to STS Contracting which were not authorized by LIUNA and the Executive Board of Local 657 in accordance with the governing rules of LIUNA and its subordinate local unions and for uses other than for the benefit of Local 657 and its members.

8.  It was a part of the conspiracy that Defendant ANTHONY FREDERICK and an additional Local 657 officer would sign those checks made out to STS Contracting and deliver them to Defendants GARY COOPER and CHRISTOPHER KWEGAN and in order to facilitate unauthorized transfer of Local 657 funds to STS Contracting.

9.  It was a part of the conspiracy that Defendants GARY COOPER and CHRISTOPHER KWEGAN would, directly and indirectly, endorse, execute and negotiate those checks and deposit the proceeds into the STS Contracting Amalgamated Account in order to complete the unauthorized transfer of the funds of Local 657 to STS Contracting.

**Overt Acts**

In furtherance of the conspiracy and to effect the objects thereof, Defendants ANTHONY FREDERICK, CHRISTOPHER KWEGAN, and GARY COOPER and their co-conspirators, known and unknown to the grand jury,  committed and caused to be committed by the defendants, and others, in the District of Columbia and elsewhere the following overt acts:

10.  On or about May 8, 2013, Defendant GARY COOPER prepared a project proposal on behalf of STS Contracting to renovate the Local 657 union hall at 5201 First Place, N.E. Washington, D.C. for a fee of $1,459,593.84 and delivered it to Defendant ANTHONY FREDERICK.

11.  On or about May 10, 2013, Defendant ANTHONY FREDERICK signed the project proposal dated May 8, 2013, and prepared by Defendant GARY COOPER on behalf of STS Contracting, to renovate the Local 657 union hall at 5201 First Place, N.E. Washington, D.C. for a fee of $1,459,593.84.

12.  On or about May 15, 2013, Defendant GARY COOPER prepared a project proposal on behalf of STS Contracting to expedite permits for the construction of the new Local 657 training center at 5332 First Place, N.E. Washington, D.C. for a fee of "$20,000 + Fees Per Permit" and delivered it to Defendant ANTHONY FREDERICK.

13.  On or about May 15, 2013, Defendant ANTHONY FREDERICK signed the project proposal dated May 15, 2013, and prepared by Defendant GARY COOPER on behalf of STS Contracting to expedite permits for the construction of the new Local 657 training center at 5332 First Place, N.E. Washington, D.C. for a fee of "$20,000 + Fees Per Permit".

14.  On or about May 31, 2013, Defendants GARY COOPER and CHRISTOPHER KWEGAN opened the STS Contracting Amalgamated Account with themselves as signatories to that account authorized to deposit and withdraw funds.

15.  On or about July 23, 2013, Defendant ANTHONY FREDERICK signed a check drawn against the Local 657 Amalgamated Account made payable to STS Contracting in the amount of $151,572.00.

16.  On or about August 26, 2013, Defendant ANTHONY FREDERICK signed a check drawn against the Local 657 Amalgamated Account made payable to STS Contracting in the amount of $80,000.00.

17.  On or about September 10, 2013, Defendant ANTHONY FREDERICK signed a check drawn against the Local 657 Capital One Account made payable to STS Contracting in the amount of $99,645.00.

18.  On or about September 25, 2013, Defendant ANTHONY FREDERICK signed a check drawn against the Local 657 Amalgamated Account made payable to STS Contracting in the amount of $85,000.00.

19.  On or about November 7, 2013, Defendant ANTHONY FREDERICK signed a check drawn against the Local 657 Amalgamated Account made payable to STS Contracting in the amount of $97,000.00.

20.  On or about November 7, 2013, Defendant ANTHONY FREDERICK signed a check drawn against the Local 657 Amalgamated Account made payable to STS Contracting in the amount of $80,490.00.

21.  On or about December 2, 2013, Defendant ANTHONY FREDERICK signed a check drawn against the Local 657 Amalgamated Account made payable to STS Contracting in the amount of $80,700.00.

22.  On or about December 16, 2013, Defendant ANTHONY FREDERICK signed a check drawn against the Local 657 Amalgamated Account made payable to STS Contracting in the amount of $87,000.00.

23.  On or about December 23, 2013, Defendant ANTHONY FREDERICK signed a check drawn against the Local 657 Amalgamated Account made payable to STS Contracting in the amount of $88,750.00.

24.  On or about January 1, 2014, Defendant ANTHONY FREDERICK signed a check drawn against the Local 657 Amalgamated Account made payable to STS Contracting in the amount of $96,700.00.

25.  On or about January 1, 2014, Defendant ANTHONY FREDERICK signed a check drawn against the Local 657 Amalgamated Account made payable to STS Contracting in the amount of $96,700.00.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

### (29 U.S.C. § 186, 18 U.S.C. § 371)

(Conspiracy to Make Unlawful Labor Payments)

1.  The allegations contained in paragraphs 1 through 14 of the General Allegations of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

2.  Beginning at least as early as April 2013, and continuing at least through June 2014, both dates being approximate, the exact dates being unknown to the Grand Jury, in the District of the District of Columbia and elsewhere, Defendants ANTHONY FREDERICK, CHRISTOPHER KWEGAN, and GARY COOPER, and other persons both known and unknown to the Grand Jury, did unlawfully, willfully and knowingly, combine, conspire, confederate and agree together and with each other to commit offenses against the United States, that is, to violate Section 186(a)(2), (b)(1), and (d)(2) of Title 29, United States Code.

### Objects of the Conspiracy

3.  It was an object of the conspiracy that Defendant ANTHONY FREDERICK while an officer and employee in Local 657, and others known and unknown to the Grand Jury, would unlawfully and willfully request, demand, receive and accept, and agree to receive and accept, the payment, loan, and delivery of things of value in excess of $1,000.00 from STS Contracting, whose employees Local 657 represented, sought to represent, and would admit to membership.

4.   It was an object of the conspiracy that Defendants GARY COOPER and CHRISTOPHER KWEGAN, as persons acting in the interest of STS Contracting, would unlawfully and willfully pay, lend, and deliver money and other things of value in excess of $1,000 to Defendant ANTHONY FREDERICK, an officer and employee in Local 657 which represented, sought to represent, and would admit to membership the employees of STS Contracting.

## Manner and Means of the Conspiracy

5.   It was a part of the conspiracy that Defendant ANTHONY FREDERICK, and others known and unknown to the Grand Jury, would unlawfully and willfully request, demand, receive and accept, and agree to receive and accept, and that Defendants CHRISTOPHER KWEGAN and GARY COOPER would unlawfully and willfully pay, lend, and deliver, the payment, loan, and delivery of money and other things of value in excess of $1,000.00 from STS Contracting, to wit:

   a. A down payment of $225,000 for the purchase of a residence at 14721 Dunbarton Place, Upper Marlboro, Maryland to be purchased by ROC Construction a corporation in which FREDERICK served as sole Managing Member;

   b. Ownership with a 51 percent share in the ORC Construction, LLC. in the name of the wife of Defendant ANTHONY FREDERICK;

   c. A cashier's check drawn against the STS Contracting Amalgamated Account dated October 18, 2013, made payable to Defendant ANTHONY FREDERICK in the amount of $8,000; and

   d. Payment for the construction of a three-car garage at 14721 Dunbarton Place, Upper Marlboro, Maryland owned by ROC Construction and then-occupied by Defendant ANTHONY FREDERICK.

**Overt Acts**

In furtherance of the conspiracy and to effect the objects and purposes thereof, the following overt acts, among others, were committed and caused to be committed by the defendants, and others, in the District of Columbia and elsewhere:

6.  On or about June 18, 2013, Defendant ANTHONY FREDERICK executed a sales contract for purchase of a residence at 14721 Dunbarton Drive, Upper Marlboro, Maryland from Larkin Investments, LLC with himself as purchaser.

7.  On or about July 23, 2013, Defendant ANTHONY FREDERICK executed a second sales contract of purchase of a residence at 14721 Dunbarton Drive, Upper Marlboro, Maryland, from Larkin Investments, LLC with "ROC Construction" as the buyer by signing as "Anthony Frederick" on behalf of ROC Construction.

8.  On or about July 26, 2013, Defendant CHRISTOPHER KWEGAN obtained a cashier's check drawn against funds of the STS Contracting Amalgamated Account for $175,000 made payable to Larkin Investments, LLC.

9.  On or about August 9, 2013, Defendant CHRISTOPHER KWEGAN obtained a cashier's check drawn against funds of the STS Contracting Amalgamated Account for $50,000 made payable to Larkin Investments, LLC.

10.  On or about August 9, 2013, Defendant ANTHONY FREDERICK executed the closing settlement on the purchase of the residence at 14721 Dunbarton Drive, Upper Marlboro, Maryland, by presenting the cashier's checks prepared by

Defendant CHRISTOPHER KWEGAN, and executed the closing documents signing as "Managing Member" of ROC Construction.

11.  On or about July 24, 2013, Defendant GARY COOPER incorporated ORC Construction and listed "Ms. Carmen Smith" as the owner of a 51 percent of the share ORC Construction.

12.  On or about September 24, 2013, Defendants CHRISTOPHER KWEGAN and GARY COOPER opened the ORC Amalgamated Account at Amalgamated Bank.

13.  From on or about September 2013 through April 2014, Defendants CHRISTOPHER KWEGAN and GARY COOPER deposited approximately $624,000 from the STS Contracting Amalgamated Account into the ORC Amalgamated Account.

14.  On or about October 18, 2013, Defendant GARY COOPER purchased a cashier's check in the amount of $8,000 drawn against funds from the STS Contracting Amalgamated Account made payable to Defendant ANTHONY FREDERICK.

15.  On or about October 18, 2013, Defendant ANTHONY FREDERICK negotiated a cashier's check drawn against the STS Contracting Amalgamated Account dated October 18, 2013 and deposited the proceeds in his personal bank account.

16.  On or about November 26, 2013, Defendant ANTHONY FREDERICK applied to Prince George's County, Maryland for a permit to construct a 34' by 34' detached garage at 14721 Dunbarton Drive, Upper Marlboro, Maryland.

17.  On or about December 2013, Defendants CHRISTOPHER KWEGAN and GARY COOPER caused STS Contracting to construct a 34' by 34' detached garage at 14721 Dunbarton Drive, Upper Marlboro, Maryland.

All in violation of Title 18, United States Code, Section 371.

## COUNT THREE

### (18 U.S.C. § 1343, 1346)

### (Wire and Honest Services Fraud)

1.   The allegations contained in paragraphs 1 through 14 of the General Allegations of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

2.   Beginning at least as early as April 2013, and continuing at least through June 2014, both dates being approximate, the exact dates being unknown to the Grand Jury, in the District of Columbia and elsewhere, Defendants ANTHONY FREDERICK, CHRISTOPHER KWEGAN, and GARY COOPER, and other persons both known and unknown to the Grand Jury, did unlawfully, and knowingly devise and intend to devise a scheme and artifice to defraud Local 657 and its members.

### The Scheme to Defraud

3.   The scheme and artifice to defraud devised by Defendants ANTHONY FREDERICK, CHRISTOPHER KWEGAN, and GARY COOPER, was intended to deprive Local 657 of property consisting of more than $1.7 million.

4.   The scheme and artifice to defraud devised by Defendants ANTHONY FREDERICK, CHRISTOPHER KWEGAN, and GARY COOPER was intended to deprive Local 657 and its members of their intangible right to the honest services of Defendant ANTHONY FREDERICK owed pursuant to the LMRDA, Title 29, United States Code, Section 501(a); to Section 4(F) of Article IV of the LIUNA

Uniform Local Constitution; and to LIUNA's "Code of Best Practices" through bribes and kickbacks.

## Manner and Means of the Scheme to Defraud

5.   It was part of said scheme and artifice that Defendant ANTHONY FREDERICK would secretly receive bribes and kickbacks from Defendants GARY COOPER and CHRISTOPHER KWEGAN in return for favorable action on their proposals or requests involving Local 657 and contrary to Defendant FREDERICK'S fiduciary obligations under Section 501(a) of Title 29, United States Code, the LIUNA Constitution, and the LIUNA Code of Best Practices.

6.   It was part of said scheme and artifice that Defendants ANTHONY FREDERICK, GARY COOPER and CHRISTOPHER KWEGAN would secretly cause the expenditure of more than $1.70 million of Local 657 funds contrary to the rules of LIUNA and its subordinate local unions and for uses not benefitting Local 657 and its members.

7.   It was part of said scheme and artifice that Defendant GARY COOPER would draft and sign a project proposal dated May 8, 2013, on behalf of STS Contracting to renovate the Local 657 union hall for an inflated price of $1,459,593.84 and would deliver it to Defendant ANTHONY FREDERICK.

8.   It was part of said scheme and artifice that Defendant GARY COOPER would draft and sign a project proposal dated May 15, 2013, on behalf STS Contracting to expedite building permits for Local 657's training center which was already under

construction for an exorbitant fee of "$20,000 plus Fees to permit" and would deliver it to Defendant ANTHONY FREDERICK.

9.   It was part of said scheme and artifice that Defendant ANTHONY FREDERICK would sign both project proposals but not bring them before the Executive Board of Local 657 and the membership of Local 657 for consideration and approval as required by the LIUNA Constitution, and would not submit them for consideration and prior approval to higher officials in LIUNA as required by the LUINA Code of Best Practices.

10.   It was part of said scheme and artifice that Defendant ANTHONY FREDERICK would direct employees of Local 657 to prepare checks drawn on Local 657 bank accounts payable to STS Contracting for renovations to the Local 657 union hall that were not authorized by the Executive Board of Local 657 and membership of Local 657, and which had not been and would not be, performed by STS Contracting.

11.   It was part of said scheme and artifice that Defendant ANTHONY FREDERICK would direct employees of Local 657 to prepare checks drawn on Local 657 bank accounts made payable to STS Contracting for expediting construction permits totaling more than $580,000 that were not authorized by the Executive Board of Local 657 and membership of Local 657, and which exceeded the price given by Defendant GARY COOPER in his project proposal dated May 15, 2013.

12.  It was part of said scheme and artifice that Defendant GARY COOPER and CHRISTOPHER KWEGAN would negotiate the checks drawn against funds in the

Local 657 Amalgamated Account and Local 657 Capital One Account to the STS Contracting Amalgamated Account.

13.  It was part of said scheme and artifice that Defendant GARY COOPER and CHRISTOPHER KWEGAN would fail to fulfill the project proposals given by STS Contracting to Local 657, and instead would expend the funds:  1) by purchasing a residence for Defendant ANTHONY FREDERICK;  2) by transferring those Local 657 funds to other businesses operated by Defendants GARY COOPER and CHRISTOPHER KWEGAN;  and 3) by withdrawing the funds in cash, making withdrawals with themselves and third-parties as payees; purchasing luxury cars, travel, and other merchandise.

14.  It was part of said scheme and artifice that Defendant GARY COOPER and CHRISTOPHER KWEGAN would prepare and present false invoices to Local 657 showing that renovations to the Local 657 union hall had been completed by STS Contracting when in fact, little renovation work had been completed and COOPER and KWEGAN had already spent the funds of Local 657 for other purposes.

15.  It was part of said scheme and artifice that Defendant GARY COOPER and CHRISTOPHER KWEGAN would secretly provide a down payment on a house, construction of a three-car garage, and other financial benefits to Defendant ANTHONY FREDERICK, for which FREDERICK would fail to account to Local 657.

## Execution of the Scheme to Defraud

15.  On or about the dates listed below, in the District of Columbia and elsewhere, Defendants ANTHONY FREDERICK, CHRISTOPHER KWEGAN, and GARY COOPER and other persons both known and unknown to the Grand Jury, having devised and intending to devise the aforementioned scheme and artifice to defraud described in paragraphs 3 through 6 above under "The Scheme to Defraud" and for the purpose of executing said scheme and artifice and attempting to do so, did transmit and cause to be transmitted in interstate and foreign commerce, by means of wire communications, certain writings, that is, transmission of electronic mail, as indicated below:

| Date | Point of Origin | Point of Reception |
|---|---|---|
| August 1, 2013 | CHRISTOPHER KWEGAN at STS Contracting | Clerical No. 1 at Local 657 |
| August 2, 2013 | CHRISTOPHER KWEGAN at STS Contracting | Clerical No. 1 at Local 657 |
| August 8, 2013 | CHRISTOPHER KWEGAN at STS Contracting | Clerical No. 1 at Local 657 |
| August 8, 2013 | Clerical No. 1 at Local 657 | CHRISTOPHER KWEGAN at STS Contracting |
| September 10, 2013 | CHRISTOPHER KWEGAN at STS Contracting | Clerical No. 1 at Local 657 |
| September 10, 2013 | CHRISTOPHER KWEGAN at STS Contracting | Clerical No. 1 at Local 657 |

| September 25, 2013 | CHRISTOPHER KWEGAN at STS Contracting | Clerical No. 1 at Local 657 |
|---|---|---|
| November 20, 2013 | CHRISTOPHER KWEGAN at STS Contracting | Clericals No. 2 and 3 at Local 657 |
| December 31, 2013 | CHRISTOPHER KWEGAN at STS Contracting | Clerical No. 3 at Local 657 |
| June 5, 2014 | CHRISTOPHER KWEGAN at STS Contracting | Clerical No. 3 at Local 657 |
| June 9, 2014 | CHRISTOPHER KWEGAN at STS Contracting | Clerical No. 3 at Local 657 |

All in violation of Title 18, United States Code, Sections 1343, 1346 and 2.

## COUNTS FOUR through FORTY-FIVE

### (18 U.S.C. § 1957)

### (Money Laundering)

1.   The allegations contained in paragraphs 1 through 14 of the General Allegations of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

2.   On or about the dates set forth below, in the District of Columbia, and elsewhere, the defendants, did knowingly engage and attempt to engage in the following monetary transactions by through or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is the, deposit, withdrawal, transfer, and exchange of funds, such property having been derived from a specified unlawful activity, that is, theft from a labor organization and wire fraud, in violation of 29 U.S.C. § 501(c) and 18 U.S.C. § 1343.

| Count | Defendant | Date | Monetary Transaction |
|---|---|---|---|
| 4 | CHRISTOPHER KWEGAN | On or about July 26, 2013 | $175,000 Cashier's Check Payable to Larkin Investments from STS Contracting Amalgamated Account |
| 5 | CHRISTOPHER KWEGAN | On or about August 9, 2013 | $50,000 Cashier's Check Payable to Larkin Investments from STS Contracting Amalgamated Account |
| 6 | ANTHONY FREDERICK | On or about August 9, 2013 | Real Estate Closing on 14721 Dunbarton Drive, Upper Marlboro, Maryland for sale price of $560,000 |
| 7 | CHRISTOPHER KWEGAN | On or about August 29, 2013 | Cash Withdrawal of $12,000 from STS Contracting Amalgamated Account at Amalgamated Bank |
| 8 | CHRISTOPHER KWEGAN | On or about September 13, 2013 | $13,000 Cashier's Check to STS Contracting from STS Contracting Amalgamated Account |
| 9 | CHRISTOPHER KWEGAN | On or about September 20, 2013 | $47,500 Wire Transfer to Specialized Trading Services in Doha, Qatar from STS Contracting Amalgamated Account |

| 10 | CHRISTOPHER KWEGAN | On or about October 4, 2013 | $13,000 Wire Transfer from STS Contracting Amalgamated Account to STS Contracting |
|---|---|---|---|
| 11 | CHRISTOPHER KWEGAN | On or about October 11, 2013 | $28,000 Wire Transfer from STS Contracting Amalgamated Account to Payee No. 1 in Doha, Qatar |
| 12 | CHRISTOPHER KWEGAN | On or about October 15, 2013 | $12,500 Wire Transfer to STS Contracting from STS Contracting Amalgamated Account |
| 13 | CHRISTOPHER KWEGAN | On or about November 7, 2013 | $14,500 Cashier's Check from STS Contracting Amalgamated Account to GARY COOPER |
| 14 | GARY COOPER | On or about November 8, 2013 | Negotiation of $14,500 Cashier's Check from STS Contracting Amalgamated Account |
| 15 | CHRISTOPHER KWEGAN | On or about November 7, 2013 | $28,000 Cashier's Check from STS Contracting Amalgamated Account to Rockville Audi |
| 16 | CHRISTOPHER KWEGAN | On or about November 8, 2013 | $20,000 Cashier's Check from STS Contracting Amalgamated Account to Rockville Audi |
| 17 | CHRISTOPHER KWEGAN | On or about December 2, 2013 | $100,000 Wire Transfer from STS Contracting Amalgamated Account to Specialized Trading Services |
| 18 | CHRISTOPHER KWEGAN | On or about December 9, 2013 | $20,000 Cashier's Check from STS Contracting Amalgamated Account to Payee No. 2 |
| 19 | CHRISTOPHER KWEGAN | On or about December 9, 2013 | $28,000 Interbank Transfer from STS Contracting Amalgamated Account to ORC Amalgamated Account |
| 20 | CHRISTOPHER KWEGAN | On or about December 23, 2013 | $15,000 Cashier's Check from STS Contracting Amalgamated Account to GARY COOPER |
| 21 | GARY COOPER | On or about December 26, 2013 | Negotiation of $15,000 Cashier's Check from STS Contracting Amalgamated Account |
| 22 | CHRISTOPHER KWEGAN | On or about December 27, 2013 | $25,000 Interbank Transfer from STS Contracting Amalgamated Account to ORC Amalgamated Account |
| 23 | CHRISTOPHER KWEGAN | On or about December 28, 2013 | $25,000 Interbank Transfer from STS Contracting Amalgamated Account to ORC Amalgamated Account |
| 24 | CHRISTOPHER KWEGAN | On or about December 30, 2013 | $20,204.62 Check to Chase Auto Finance from ORC Amalgamated Account |
| 25 | CHRISTOPHER KWEGAN | On or about January 7, 2014 | $15,000 Interbank Transfer from STS Contracting Amalgamated Account to ORC Amalgamated Account |
| 26 | CHRISTOPHER KWEGAN | On or about January 9, 2014 | $27,000 Check to Mercedes Benz Arlington from ORC Amalgamated Account |

| 27 | CHRISTOPHER KWEGAN | On or about January 14, 2014 | $19,000 Interbank Transfer from STS Contracting Amalgamated Account to ORC Amalgamated Account |
|---|---|---|---|
| 28 | CHRISTOPHER KWEGAN | On or about January 16, 2014 | $20,000 Check to Payee No. 3 from ORC Amalgamated Account |
| 29 | CHRISTOPHER KWEGAN | On or about January 21, 2014 | $12,684 Check to Payee No. 3 from ORC Amalgamated Account |
| 30 | CHRISTOPHER KWEGAN | January 22, 2014 | $30,000 Interbank Transfer from STS Contracting Amalgamated Account to ORC Amalgamated Account |
| 31 | CHRISTOPHER KWEGAN | On or about February 3, 2014 | $30,000 Wire Transfer from STS Contracting Amalgamated Account to Payee No. 4 in Doha, Qatar |
| 32 | CHRISTOPHER KWEGAN | On or about February 3, 2014 | $11,000 Interbank Transfer from STS Contracting Amalgamated Account to ORC Amalgamated Account |
| 33 | CHRISTOPHER KWEGAN | On or about February 12, 2014 | $12,000 Interbank Transfer from STS Contracting Amalgamated Account to ORC Amalgamated Account |
| 34 | CHRISTOPHER KWEGAN | On or about February 20, 2014 | $12,000 Interbank Transfer from STS Contracting Amalgamated Account to ORC Amalgamated Account |
| 35 | CHRISTOPHER KWEGAN | On or about February 21, 2014 | $20,000 Wire Transfer from STS Contracting Amalgamated Account to Payee No. 5 in Doha, Qatar |
| 36 | CHRISTOPHER KWEGAN | On or about February 24, 2014 | $22,000 Interbank Transfer from STS Contracting Amalgamated Account to ORC Amalgamated Account |
| 37 | CHRISTOPHER KWEGAN | On or about February 23, 2014 | $25,000 Check to Harley Stanfield Global from ORC Amalgamated Account |
| 38 | CHRISTOPHER KWEGAN | On or about February 27, 2014 | $20,000 Interbank Transfer from STS Contracting Amalgamated Account to ORC Amalgamated Account |
| 39 | CHRISTOPHER KWEGAN | On or about March 4, 2014 | $20,000 Interbank Transfer from STS Contracting Amalgamated Account to ORC Amalgamated Account |
| 40 | CHRISTOPHER KWEGAN | On or about March 6, 2014 | $15,000 Wire Transfer from STS Contracting Amalgamated Account to Payee No. 5 in Doha, Qatar |
| 41 | CHRISTOPHER KWEGAN | On or about March 11, 2014 | $20,000 Interbank Transfer from STS Contracting Amalgamated Account to ORC Amalgamated Account |
| 42 | CHRISTOPHER KWEGAN | On or about March 11, 2014 | $10,850 Check to Payee No. 3 from ORC Amalgamated Account |
| 43 | CHRISTOPHER KWEGAN | On or about April 3, 2014 | $12,000 Check to Payee No. 3 from ORC Amalgamated Account |
| 44 | CHRISTOPHER KWEGAN | On or about May 16, 2014 | $50,000 Check to Payee No. 6 from ORC Amalgamated Account |

| 45 | CHRISTOPHER KWEGAN | On or about September 2, 2014 | $25,000 Check from ORC Amalgamated Account Amalgamated Account to CHRISTOPHER KWEGAN |

All in violation of Title 18, United States Code, 18 U.S.C. §§ 1957 and 2.

## FORFEITURE ALLEGATION on THEFT and FRAUD

### (18 U.S.C. § 981(a)(1)(C))

1.   The allegations contained in Counts One through Three of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).[1]

2.   Upon conviction of the offenses set forth in Counts One through Three of this Indictment, Defendants ANTHONY FREDERICK, CHRISTOPHER KWEGAN, and GARY COOPER shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses of conviction.  The property to be forfeited includes, but is not limited to, at least $1,700,000 in money and property taken by Defendants ANTHONY FREDERICK, CHRISTOPHER KWEGAN, and GARY COOPER;[2] and

---

[1]  The forfeiture under count 3 is only supported by a conviction under 18 USC 1343.

[2]  The forfeiture under count 3 is only supported by a conviction under 18 USC 1343.

3.  If any of the property described above, as a result of any act or omission of Defendants ANTHONY FREDERICK, CHRISTOPHER KWEGAN, and GARY COOPER:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

## FORFEITURE ALLEGATION for MONEY LAUNDERING

### (18 U.S.C. § 982(a)(1))

1.   The allegations contained in Counts Four through Forty-Five of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 982(a)(1) and Title 28, United States Code, Section 2461(c).

2.   Upon conviction of the offenses set forth in Counts Four through Forty-Five of this Indictment, Defendants ANTHONY FREDERICK, CHRISTOPHER KWEGAN, and GARY COOPER shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a) and Title 28, United States Code, Section 2461(c), any property, real or personal, involved in such offenses, or any property traceable to such property.  The property to be forfeited includes, but is not limited to, at least $1,730,000 in money and property taken by Defendants ANTHONY FREDERICK, CHRISTOPHER KWEGAN, and GARY COOPER; and

3.   If any of the property described above, as a result of any act or omission of Defendants ANTHONY FREDERICK, CHRISTOPHER KWEGAN, and GARY COOPER:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to 18 U.S.C. § 982(a)(1) and 28 U.S.C. § 2461(c).

A TRUE BILL:

_____
FOREPERSON

_____
TRIAL ATTORNEY
Vincent J. Falvo, Jr.,
United States Department of Justice

Dated:  October 23, 2015